United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

NEALE E. JOHNSON,

           Plaintiff,

   v.

BANK OF AMERICA , N.A., et al.,

           Defendants.

Case No.15-CV-03181-LHK

**ORDER RE EX PARTE APPLICATION FOR TRO; ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION**

Re: Dkt. No. 3

On July 9, 2015, Plaintiff Neale Johnson ("Plaintiff") filed the instant ex parte application for a temporary restraining order and order to show cause. ("Mot."), ECF No. 3. Having considered Plaintiff's motion, the relevant law, and the record in this case, the Court GRANTS Plaintiff's ex parte application for a temporary restraining order and order to show cause.

# I.      BACKGROUND

## A.  Factual Background

Plaintiff is a resident of California. Compl. ¶ 2. Defendant Bank of America is "domiciled in North Carolina, where it has its headquarters and its principal place of business." *Id.* Defendant PNC Bank is "domiciled in Deleware [sic], where it has its headquarters and its principal place of

1

1  business." *Id.*

2      Plaintiff avers that he purchased the property located at 14515 Mountain Quail Road,

3  Salinas, CA ("Property") in or around 2001. *Id.* ¶ 9. The Property is a single-family residence and

4  Plaintiff's primary dwelling place. *Id.* ¶ 10. In 2005, Plaintiff executed a deed of trust and

5  promissory note, a first lien on the Property, in favor of National City Mortgage. *Id.* ¶ 9.

6  According to Plaintiff, "shortly thereafter," Defendant Bank of America became the servicer and

7  beneficiary under the deed of trust. *Id.* Between "2005 and 2008," Defendant PNC became the

8  servicer of Plaintiff's loan. *Id.*

9      On or about August 2014, Plaintiff contacted his loan servicer, Defendant PNC, to inquire

10  about a loan modification. *Id.* ¶ 10. On September 9, 2014, Defendant PNC assigned Joyce B. as

11  Plaintiff's "single point of contact" ("SPOC") to assist with Plaintiff's loan modification

12  application.[1] *Id.* On September 10, 2014, Defendant PNC assigned Crystal D. as Plaintiff's SPOC.

13  *Id.* In November 2014, Defendant PNC again switched Plaintiff's SPOC to Raina W. *Id.* Plaintiff

14  alleges that he was "never able to contact and speak with any of his appointed contacts regarding

15  his loan modification," and that all of the assigned contacts "failed to assist [Plaintiff] with

16  coordinating documents associated with his loan modification." *Id.*

17      On September 30, 2014, Plaintiff submitted a completed loan modification application. *Id.*

18  ¶ 12. Following Plaintiff's submission, Defendant PNC sent Plaintiff letters requesting additional

19  documents and information regarding Plaintiff's application. *Id.* Plaintiff avers that he "always

20  timely submitted the requested documents to" Defendant PNC. *Id.* Plaintiff further alleges that

21  Defendant PNC failed to provide Plaintiff with written acknowledgement of its receipt of

22  Plaintiff's supplemental documents. *Id.* ¶ 13. Consequently, Plaintiff contacted his SPOC to

23  confirm that Defendant PNC had received Plaintiff's supplemental materials, but "on most of, if

24  not all occasions, his appointed single point of contact never picked up the phone," and never

25

26  [1] As discussed *infra*, the California Homeowner's Bill of Rights requires that a mortgage servicer
   appoint a "single point of contact" if a borrower "requests a foreclosure prevention alternative."
27  Cal. Civ. Code § 2923.7.

2

28  Case No.15-CV-03181-LHK
   ORDER GRANTING EX PARTE MOTION FOR TRO; ORDER TO SHOW CAUSE RE PRELIMINARY
   INJUNCTION

1   returned Plaintiff's calls despite Plaintiff's voicemails requesting that the contact do so. *Id.* ¶ 14.

2          On May 5, 2015, Defendant PNC sent Plaintiff a denial letter stating that Plaintiff's loan

3   modification application had been denied "based on insufficient income." *Id.* ¶ 15. That letter

4   additionally provided that Plaintiff could dispute the denial within 30 days, i.e., June 4, 2015, by

5   either faxing or mailing a designated appeal form. *Id.* On June 4, 2015, Plaintiff sent his appeal

6   request via facsimile on "two separate occasions to ensure that the requests were received timely."

7   *Id.* ¶ 16. Plaintiff alleges he was able to fax his appeal form and supporting documents without

8   error. *Id.* However, on June 5, 2015, Defendant PNC sent Plaintiff a letter indicating that

9   Defendant PNC would not review Plaintiff's appeal as it was not received within 30 days of the

10  date of the denial letter. *Id.* Plaintiff's SPOC during this time, Raina W., allegedly "did not exert

11  any effort in ensuring [Plaintiff's] right to an appeal." *Id.* ¶ 17.

12         On June 17, 2015, Defendant PNC recorded a notice of trustee's sale against the Property

13  and sent Plaintiff a notice of trustee's sale to be conducted on July 13, 2015. *Id.* ¶ 18. Plaintiff

14  alleges that Defendant PNC has not posted a notice of sale on Plaintiff's property. *Id.*

15         Plaintiff alleges violations of various provisions of the California Homeowners Bill of

16  Rights. *See* Cal. Civ. Code §§ 2923.6, 2923.7, 2924.10, 2924f. More specifically, Plaintiff alleges

17  that Defendants failed to comply with § 2923.6's 30-day appeal period; § 2923.7's duties of an

18  assigned single point of contact; § 2924.10's requirement that Defendants provide written

19  acknowledgement of the receipt of any and all documents received in connection with a first lien

20  loan modification; and § 2924f's requirement that Defendants post a notice of sale on the Property

21  at least 20 days before the date of sale.

22         Plaintiff seeks a temporary restraining order, preliminary and permanent injunction,

23  declaratory relief, damages, disgorgement, specific performance, damages, and attorney's fees and

24  costs. *Id.* Prayer for Relief.

25  **B.  Procedural History**

26         Plaintiff filed a complaint and the instant ex parte motion for temporary restraining order

27

28  Case No.15-CV-03181-LHK
    ORDER GRANTING EX PARTE MOTION FOR TRO; ORDER TO SHOW CAUSE RE PRELIMINARY
    INJUNCTION

United States District Court
Northern District of California

1   on July 9, 2015. ECF Nos. 1, 3.

2   **II.     LEGAL STANDARD**

3           Because Plaintiff seeks issuance of a temporary restraining order without notice to the

4   Defendants, Plaintiff must satisfy both the general standard for temporary restraining orders and

5   the requirements for ex parte orders set forth in Federal Rule of Civil Procedure 65(b). The

6   standard for issuing a temporary restraining order is identical to the standard for issuing a

7   preliminary injunction. *Brown Jordan Int'l, Inc. v. Mind's Eye Interiors, Inc.*, 236 F. Supp. 2d

8   1152, 1154 (D. Haw. 2002); *Lockheed Missile & Space Co., Inc. v. Hughes Aircraft Co.*, 887 F.

9   Supp. 1320, 1323 (N.D. Cal. 1995). "A plaintiff seeking a preliminary injunction must establish

10  that he [or she] is likely to succeed on the merits, that he [or she] is likely to suffer irreparable

11  harm in the absence of preliminary relief, that the balance of equities tips in his [or her] favor, and

12  that an injunction is in the public interest." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7,

13  20 (2008) (emphasis added).

14          Moreover, the party seeking the injunction bears the burden of proving these elements.

15  *Klein v. City of San Clemente*, 584 F.3d 1196, 1201 (9th Cir. 2009). "A preliminary injunction is

16  'an extraordinary and drastic remedy, one that should not be granted unless the movant, *by a clear*

17  *showing*, carries the burden of persuasion.'" *Lopez v. Brewer*, 680 F.3d 1068, 1072 (9th Cir. 2012)

18  (citation omitted) (emphasis in original).

19          Federal Rule of Civil Procedure 65(b)(1) states that the court may issue a temporary

20  restraining order without notice only if: "A) specific facts in an affidavit or a verified complaint

21  clearly show that immediate and irreparable injury, loss, or damage will result to the movant

22  before the adverse party can be heard in opposition; and B) the movant's attorney certifies in

23  writing any efforts made to give notice and the reasons why it should not be required." Also

24  related to notice, the Court's Local Rule 65–1(b) states that, unless relieved by the Court for good

25  cause shown, "on or before the day of an ex parte motion for a temporary restraining order,

26  counsel applying for the temporary restraining order must deliver notice of such motion to

27

28  Case No.15-CV-03181-LHK
    ORDER GRANTING EX PARTE MOTION FOR TRO; ORDER TO SHOW CAUSE RE PRELIMINARY
    INJUNCTION

United States District Court
Northern District of California

4

1     opposing counsel or party."

2     **III.    DISCUSSION**

3           Plaintiff's request for a temporary restraining order ("TRO") focuses on two of Plaintiff's

4     claims for relief: Cal. Civ. Code § 2923.6's 30-day period within which to file an appeal, and Cal.

5     Civ. Code § 2923.6's duties imposed on a statutorily mandated "single point of contact"

6     ("SPOC"). Mot. at 6–7. As discussed above, Plaintiff bears the burden of showing that the *Winter*

7     factors are satisfied. For the reasons stated below, the Court concludes that Plaintiff has satisfied

8     the *Winter* requirements.

9           **A.  Likelihood of Success on the Merits**

10           Under the first *Winter* factor, Plaintiff must show a "likelihood of success on the merits."

11     *Winter*, 555 U.S. at 20. The Court addresses this factor below.

12           **1.  Section 2923.6 Claim**

13           Plaintiff's first claim against Defendants is premised on Cal. Civ. Code § 2923.6's

14     additional statutory protections of homeowners. Section 2923.6 provides, in relevant part:

15
16
17
18                 (c) If a borrower submits a complete application for a first lien loan modification offered by, or through, the borrower's mortgage servicer. . .beneficiary, or authorized agent shall not record a notice of default or notice of sale, or conduct a trustee's sale, while the complete first lien loan modification application is pending. **A mortgage servicer, mortgagee, trustee, beneficiary, or authorized agent shall not record a notice of default or notice of sale or conduct a trustee's sale until any of the following occurs:**

19
20
21                 (1) The mortgage servicer makes a written determination that the borrower is not eligible for a first lien loan modification, and **any appeal period pursuant to subdivision (d) has expired.**

22                 . . .

23
24                 (d) If the borrower's application for a first lien loan modification is denied, **the borrower shall have at least 30 days from the date of the written denial to appeal the denial** and to provide evidence that the mortgage servicer's determination was in error.

25     Here, Plaintiff both alleges and has submitted the documents referenced in his complaint showing

26     that Plaintiff submitted an application for a first lien loan modification to Defendants. *See* Compl.

27

28    

United States District Court
Northern District of California

¶ 12; Declaration of Neale Johnson ("Pl. Decl."), ECF Nos. 3-4, 3-5, Exh. C. Plaintiff has also submitted Defendants' written denial letter dated May 5, 2015. Pl. Decl., Exh. E. Under § 2923.6(d), Plaintiff was entitled to "at least 30 days from the date of the written denial to appeal the denial." Cal. Civ. Code § 2923.6(d).

Plaintiff alleges that he faxed a completed appeal form and supporting documents to Defendant PNC twice on June 4, 2015, which is exactly 30 days from May 5, 2015. Compl. ¶ 16. The Court also notes that Defendant PNC's May 5, 2015 denial letter also explicitly stated that "[t]o be considered for an appeal, we must receive your completed Appeal Form by June 4, 2015." *See* Pl. Decl., Exh. E. Plaintiff has submitted a copy of his submitted appeal form, which is dated June 4, 2015. *Id.*, Exh. F. Moreover, Defendant PNC's denial letter appears to indicate that Defendant PNC did, in fact, receive Plaintiff's appeal form and materials. *See id.*, Exh G. Despite Plaintiff's apparently timely submission of an appeal form, Defendant PNC's June 5, 2015 letter denied Plaintiff's appeal request because "[P]laintiff's request was not received within 30 days of the date of your original Offer/denial letter." Pl. Decl., Exh. G.

Based on these allegations and supporting documents, the Court finds that Plaintiff has sufficiently alleged a claim under Cal. Civ. Code § 2923.6 and has shown a likelihood of success on the merits. Section 2923.6 explicitly prohibits mortgage servicers from conducting or noticing trustee's sales until the expiration of designated time periods. Section 2923.6's prohibitions are mandatory: once a borrower submits a first lien loan modification application, a mortgage servicer or other designated party "*shall* not record . . . a notice of sale or conduct a trustee's sale until" a statutory condition occurs. Cal. Civ. Code § 2923.6(c) (emphasis added). Here, Defendants allegedly denied Plaintiff's appeal as untimely and proceeded to notice a trustee's sale. Even assuming that Defendants' denial of Plaintiff's appeal as untimely is ultimately determined to comply with the 30-day appeal period provided for in § 2623.6(d), Plaintiff further notes that under § 2396.6(e), Defendants were obligated to wait a minimum of 15 days after Defendants' June 5, 2015 denial letter before recording a notice of sale. Mot. at 6–7. Instead, Defendants

Case No.15-CV-03181-LHK
ORDER GRANTING EX PARTE MOTION FOR TRO; ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION

United States District Court
Northern District of California

allegedly recorded a notice of sale on June 17, 2015, 3 days earlier than the period provided for in § 2623.6. Accordingly, the Court finds that Plaintiff has submitted sufficient evidence to show a likelihood of success on the merits with respect to Defendants' lack of compliance with § 2923.6 in two respects: (1) the 30-day period within which to file an appeal; and (2) the 15-day waiting period before recording a notice of sale.

### 2. Section 2923.7 Claim

Plaintiff's second claim is premised on Defendants' alleged failure to provide a "single point of contact" ("SPOC") that complied with the requirements put forth in Cal. Civ. Code § 2923.7. Section 2923.7, in addition to imposing a duty on a mortgage service to provide a SPOC, imposes the following responsibilities:

> (b) The single point of contact shall be responsible for doing all of the following:
>
> (1) Communicating the process by which a borrower may apply for an available foreclosure prevention alternative and the deadline for any required submissions to be considered for these options.
>
> (2) Coordinating receipt of all documents associated with available foreclosure prevention alternatives and notifying the borrower of any missing documents necessary to complete the application.
>
> (3) Having access to current information and personnel sufficient to timely, accurately, and adequately inform the borrower of the current status of the foreclosure prevention alternative.
>
> (4) Ensuring that a borrower is considered for all foreclosure prevention alternatives offered by, or through, the mortgage servicer, if any.
>
> (5) Having access to individuals with the ability and authority to stop foreclosure proceedings when necessary.
>
> (c) The single point of contact shall remain assigned to the borrower's account until the mortgage servicer determines that all loss mitigation options offered by, or through, the mortgage servicer have been exhausted or the borrower's account becomes current.
>
> (d) The mortgage servicer shall ensure that a single point of contact refers and transfers a borrower to an appropriate supervisor upon request of the borrower, if the single point of contact has a supervisor.

7

Case No.15-CV-03181-LHK
ORDER GRANTING EX PARTE MOTION FOR TRO; ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION

1
2
3

(e) For purposes of this section, "single point of contact" means an individual or team of personnel each of whom has the ability and authority to perform the responsibilities described in subdivisions (b) to (d), inclusive. The mortgage servicer shall ensure that each member of the team is knowledgeable about the borrower's situation and current status in the alternatives to foreclosure process.

4     Plaintiff contends that none of the three individuals assigned as Plaintiff's SPOC complied with

5     the following three requirements under § 2923.7(b): (1) none of the SPOCs coordinated receipt of

6     Plaintiff's documents associated with foreclosure alternative requests or notified Plaintiff of

7     missing documents as required under § 2923.7(b)(2); (2) none of the SPOCs ensured that Plaintiff

8     was "considered for all foreclosure prevention alternatives offered" by Defendants under

9     § 2923.7(b)(4); and (3) Raina W., Plaintiff's last assigned SPOC, should have alerted "individuals

10    with the ability and authority to stop foreclosure proceedings," but failed to do so under

11    § 2923.7(b)(5).

12          Here, the Court finds that Plaintiff has sufficiently alleged plausible claims under

13    § 2923.7(b). Plaintiff has specifically alleged that Plaintiff contacted all three of his assigned

14    SPOCs at various times to seek additional information, and to confirm receipt of his loan

15    modification application, appeal, and supporting materials. *Id.* ¶ 14. Plaintiff further alleges that he

16    was unable to ever reach the SPOCs, and that despite Plaintiff's voicemails requesting that the

17    SPOC return Plaintiff's call, the SPOCs never did so. *Id.* Factual allegations that a SPOC has

18    failed to communicate with a homeowner and failed to comply with the specific obligations laid

19    out in § 2923.7 are sufficient to plead a violation of § 2923.7. *See, e.g.*, *Penermon v. Wells Fargo*

20    *Bank, N.A.*, 47 F. Supp. 3d 982, 999–1000 (N.D. Cal. 2014); *cf. Greene v. Wells Fargo Bank,*

21    *N.A.*, No. 15-00048 JSW, 2015 WL 3945996, at *1 (N.D. Cal. June 26, 2016).

22          Accordingly, the Court concludes that Plaintiff has sufficiently shown a likelihood of

23    success on the merits with respect to Plaintiff's § 2923.7 claim. As Plaintiff has satisfied this first

24    requirement with respect to both Plaintiff's §§ 2923.6 and 2923.7 claims, the Court turns to the

25    remainder of the *Winter* factors.

26

27                                                     8

28    Case No.15-CV-03181-LHK
      ORDER GRANTING EX PARTE MOTION FOR TRO; ORDER TO SHOW CAUSE RE PRELIMINARY
      INJUNCTION

United States District Court
Northern District of California

United States District Court
Northern District of California

### B.  Irreparable Injury

Here, Plaintiff stands to lose his home, which as Plaintiff notes, if it is sold to a bona fide purchaser, Plaintiff will never be able to replace it. Mot. at 11. Plaintiff has lived at the Property since 2001, and the loss of an interest in real property is an irreparable harm. *See Park Village Apartment Tenants Ass'n v. Mortimer Howard Trust*, 636 F.3d 1150, 1159 (9th Cir. 2011) ("It is well-established that the loss of an interest in real property constitutes an irreparable injury."); *see also Sundance Land Corp. v. Cmty. First Fed. Sav. & Loan Ass'n*, 840 F.2d 653, 661 (9th Cir. 1988) (holding that real property is always considered unique for injury purposes). Moreover, the fact that Plaintiff may never be able to recover the Property if it is sold at the trustee's sale scheduled for July 13, 2015 would also make Plaintiff's injury irreparable. *See Taylor v. Westly*, 488 F.3d 1197, 1202 (9th Cir. 2007) ("Once the property is sold, it may be impossible for plaintiffs to reacquire it, thus creating the requisite 'irreparable harm.'"); *see also Morris v. Residential Credit Solutions*, No. 14-CV-1460, 2015 WL 428114, at *9 (E.D. Cal. Feb. 2, 2015).

In sum, the Court concludes that Plaintiff has shown a likelihood of imminent, irreparable harm.

### C.  Balance of Hardships

The Court now considers the balance of the parties' respective hardships. As discussed above, it is beyond dispute that Plaintiff faces imminent, irreparable injury in the form of losing his family residence at a trustee's sale scheduled for three days from the date of this Order. Moreover, the Court notes that the statutory remedy under §§ 2923.6 and 2923.7 is that any trustee's sale would be enjoined "until the court determines that the mortgage servicer . . . . has corrected and remedied the violation or violations giving rise to the action for injunctive relief." Cal. Civ. Code § 2924.12(a)(1).

Keeping that in mind, the Court concludes that the balance of hardships weighs heavily in favor of injunctive relief. As other courts in this District have recognized, the corresponding hardship to Defendants would likely be minimal as a short delay in the foreclosure sale would not

Case No.15-CV-03181-LHK
ORDER GRANTING EX PARTE MOTION FOR TRO; ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION

1   threaten Defendants' security interest in the Property, and the probability that delay would result

2   in other damage is also likely minimal. *Greene*, 2015 WL 3945996, at *2; *see also Gilmore v.*

3   *Wells Fargo Bank N.A.*, No. 14-2389 CW, 2014 WL 3749984, at *5 (N.D. Cal. July 29, 2014)

4   ("[T]he potential harm to [defendant] is unlikely to be substantial . . . a preliminary injunction

5   would have only delayed foreclosure for a relatively short period of time."). More specifically, if

6   the Court ultimately determines that Plaintiff's claims lack merit, Defendants would be able to

7   proceed with the trustee's sale. *See Gilmore*, 2014 WL 3749984, at *5. While Defendants may

8   face some small hardship as a result of a delayed trustee's sale, that hardship must be weighed

9   against the irreparable injury that Plaintiff faces if the trustee's sale is allowed to go forward

10  without giving Plaintiff an opportunity to adjudicate his claims against Defendants. *See Greene*,

11  2015 WL 3945996, at *2; *Gilmore*, 2014 WL 3749984, at *5.

12         Weighing these competing hardships, the Court concludes that the balance of hardships

13  weighs heavily in Plaintiff's favor.

14         **D.   Public Interest**

15         As the Ninth Circuit has explained, the public interest factor under *Winter* "'primarily

16  addresses impact on non-parties rather than parties'. . . . It embodies the Supreme Court's

17  direction that 'in exercising their sound discretion, courts of equity should pay particular regard

18  for the public consequences in employing the extraordinary remedy of injunction.'" *Bernhardt v.*

19  *Los Angeles Cnty.*, 339 F.3d 920, 931–32 (9th Cir. 2003) (quoting *Weinberger v. Romero-Barcelo*,

20  456 U.S. 305, 312 (1982)).

21         Here, the Court recognizes the public's interest in timely, predictable enforcement of

22  secured interests in real property. On the other hand, the California legislature enacted §§ 2923.6

23  and 2923.7 as part of the Homeowner's Bill of Rights to "ensure that, as part of the nonjudicial

24  foreclosure process, borrowers are considered for, and have a meaningful opportunity to obtain,

25  available loss mitigation options, if any, offered by or through the borrower's mortgage servicer,

26  such as loan modifications or other alternatives to foreclosure." Cal. Civ. Code § 2923.4. A part of

27

28  Case No.15-CV-03181-LHK
    ORDER GRANTING EX PARTE MOTION FOR TRO; ORDER TO SHOW CAUSE RE PRELIMINARY
    INJUNCTION

United States District Court
Northern District of California

10

ensuring that borrowers have a "meaningful opportunity to obtain" certain loss mitigation options necessarily includes the procedural protections for borrowers, including time periods within which to challenge mortgage servicers' decisions, as well as the affirmative duties imposed on mortgage servicers. *See, e.g.*, *Greene*, 2015 WL 3945996, at *2. The public therefore has a strong interest in ensuring that the statutorily created procedural protections for homeowners are available not only in spirit, but also in practice.

Moreover, as other courts in this District have recognized, "[d]ue to the 'adverse impact foreclosures have on households and communities,' there is a 'strong public interest in preventing unlawful foreclosures.'" *Gilmore*, 2014 WL 3749984, at *5 (quoting *Sharma v. Povident Funding Assocs., LP*, No. 09-5968 VRW, 2010 WL 143474, at *2 (N.D. Cal. Jan. 8, 2010)).

Accordingly, the Court finds that the public interest favors an injunction.

**E.   The *Winter* Factors**

In sum, the Court finds that Plaintiff has shown a likelihood of success with respect to the merits of his §§ 2923.6 and 2923.7 claims against Defendants, that there is a likelihood of irreparable injury, that the balance of hardships tips heavily in favor of Plaintiff, and that the public interest favors enforcement of the procedural protections of the Homeowner's Bill of Rights. Accordingly, the Court finds that Plaintiff has satisfied the requirements for the issuance of a temporary restraining order. *See Winter*, 555 U.S. at 20.

**F.   Federal Rule of Civil Procedure 65**

As Plaintiff has submitted his request for a temporary restraining order as an ex parte motion, Plaintiff must also satisfy the requirements of Federal Rule of Civil Procedure 65 and Civil Local Rule 65-1.

As a threshold matter, the Court admonishes Plaintiff that Plaintiff has been on notice of the allegedly wrongful recording of the July 13, 2015 trustee's sale since June 17, 2015. Plaintiff did not seek counsel until July 7, 2015, less than one week before the scheduled date of the trustee's sale. Plaintiff filed his ex parte application for a TRO on Thursday afternoon, July 9,

11

Case No.15-CV-03181-LHK
ORDER GRANTING EX PARTE MOTION FOR TRO; ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION

2015, to enjoin the trustee's sale scheduled for Monday, July 13, 2015, at 10 a.m. *See* Pl. Decl., Exh. H. Ex parte proceedings are disfavored because they do not afford the opposing party an opportunity to be heard. *See Granny Goose Foods, Inc. v. Teamsters*, 415 U.S. 423, 438–39 (1974). However, for the reasons discussed below, the Court concludes that Plaintiff has satisfied the requirements for an ex parte TRO under Rule 65, but cautions Plaintiff that if Plaintiff delays filing for relief again in the future, the Court will be unsympathetic to arguments that an injury is so imminent that the opposing side cannot be heard. The Court will not reward Plaintiff's creation of an ex parte emergency by Plaintiff's delay in his effort to seek relief.

In support of his motion, Plaintiff has submitted the declaration of Sarah Shapero, an attorney at Plaintiff's counsel's law firm, declaring that Ms. Shapero undertook multiple efforts to give notice of the instant motion to both Defendant Bank of America and Defendant PNC on July 9, 2015. *See* ECF No. 3-2. Ms. Shapero's declaration therefore complies with Rule 65's requirement that Plaintiff's attorney "certif[y] in writing any efforts made to give notice and the reasons why it should not be required." Fed. R. Civ. P. 65(b)(1)(B); *see also* Civil Local Rule 65-1 (requiring party to give notice of motion the day before or day of the filing of an ex parte TRO motion). In addition, Plaintiff's counsel Ken Hoang has filed a declaration explaining that Plaintiff approached counsel's law firm on Tuesday, July 7, 2015. ECF No. 3-3 ("Hoang Decl."), ¶ 2. Counsel drafted and filed the complaint "as quickly as possible," and indeed filed the complaint in this action two days later in the afternoon of Thursday, July 9, 2015. *Id.* ¶ 3. As the foreclosure sale is scheduled for Monday, July 13, 2015, at 10 a.m., counsel for Plaintiff avers that a "regularly noticed Motion for Preliminary Injunction was not possible." *Id.* Despite Plaintiff's delay in seeking relief, the Court finds good cause for issuing a TRO ex parte this time. However, as stated above, Plaintiff is hereby on notice that Plaintiff's delay in filing a TRO application in the future when Plaintiff has been notice of a foreclosure sale for weeks will not be deemed an ex parte emergency. The Court will not countenance abuse of the judicial process and strategic gamesmanship.

Case No.15-CV-03181-LHK
ORDER GRANTING EX PARTE MOTION FOR TRO; ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION

United States District Court
Northern District of California

1     Additionally, Rule 65(c) provides that "the court may issue a preliminary injunction or a

2 temporary restraining order only if the movant gives security in an amount that the court considers

3 proper to pay the costs and damages sustained by any party found to have been wrongfully

4 enjoined or restrained." Fed. R. Civ. P. 65(c). However, Rule 65(c) "invests the district court with

5 discretion as to the amount of security required, if any." *Jorgensen v. Cassidy*, 320 F.3d 906, 919

6 (9th Cir. 2003). Here, the Court finds that requiring the issuance of a bond would be unnecessary.

7 *See id.* (noting that "[t]he district court may dispense with the filing of a bond when it concludes

8 there is no realistic likelihood of harm to the defendant from enjoining his or her conduct."). As

9 discussed above, Defendants have a security interest in the Property that will not be impacted by a

10 short delay in the foreclosure sale. Moreover, if Plaintiff's claims turn out to lack merit, or if

11 Defendants cure the procedural violations at issue, Defendants will still have the opportunity to

12 sell the Property. Accordingly, no bond will be required at this time.

## IV.   CONCLUSION

14     For the foregoing reasons, the Court GRANTS Plaintiff's ex parte request for a temporary

15 restraining order. Defendants are hereby temporarily enjoined and restrained from selling,

16 transferring, conveying, or foreclosing on the Property located at 14515 Mountain Quail Road,

17 Salinas, CA 93908 pending further order of the Court.

18     Plaintiff shall file his Motion for Preliminary Injunction no later than 8:00 p.m. on July 13,

19 2015. Defendants shall file their response no later than 5:00 p.m. on July 20, 2015. The Court will

20 then set a date for the hearing on Plaintiff's Motion for a Preliminary Injunction.

21 **IT IS SO ORDERED.**

22 Dated: July 10, 2015

23 _Lucy H. Koh_
   _____
24 LUCY H. KOH
   United States District Judge

28 Case No.15-CV-03181-LHK
ORDER GRANTING EX PARTE MOTION FOR TRO; ORDER TO SHOW CAUSE RE PRELIMINARY
INJUNCTION

United States District Court
Northern District of California